IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01247-NRN

BEHAVIOR ANALYST CERTIFICATION BOARD, INC.,

      Plaintiff,

v.

MICHAEL MOATES, an individual;
MISTY KIESCHNICK, an individual;
and
THE GLOBAL INSTITUTE OF BEHAVIORAL PRACTITIONERS AND EXAMINERS.

      Defendants.

## AMENDED COMPLAINT

Plaintiff, Behavior Analyst Certification Board, Inc. ("the BACB"), by undersigned counsel, respectfully bring this Amended Complaint pursuant to F.R.C.P. Rule 15(a)(1)(B) against Michael Moates ("Moates"), Misty Kieschnick ("Moates' Mother"), and the Global Institute of Behavioral Practitioners and Examiners (the "Organization") (collectively, the "Defendants"), for defamation *per se* and other related claims and, in support thereof states:

### INTRODUCTION

1. **Behavior analysis** is the science of behavior, with a history extending back to the early 20th century. Its guiding philosophy is behaviorism, which is based on the premise that attempts to improve the human condition through behavior change (*e.g.,* education, behavioral health treatment, *etc.*) will be most effective if behavior itself is the primary focus.

2. Behavior analysts work with a variety of populations and in a variety of settings, although the majority of them currently provide services to individuals with intellectual disabilities and autism spectrum disorder to help maximize independence by teaching adaptive behavior and minimizing or reducing problem behavior (*e.g.*, aggression, self injury).

3. The BACB is a national nonprofit 501(c)(3) corporation established in 1998 to meet the professional credentialing needs of behavior analysts, governments, insurers, and consumers of behavior analysis services. The BACB is a credentialing organization that relies on its credibility with consumers and licensing authorities to attract professionals to attain its certifications.

4. The BACB's certifications are broad and cover the wide range of practices and specialties applicable to the profession of applied behavior analysis.

5. The BACB maintains a position as an industry leader in the behavior analyst sector, as it has over 175,000 current certificants. Currently 34 states have enacted licensure laws and affiliated regulations. Virtually all of those licensure laws and their implementing regulations defer to the BACB certification or standards to varying degrees.

6. While the BACB has some jurisdiction over behavior analysts certified by the BACB, the BACB does not have any jurisdiction over the organizations, businesses or agencies where such behavior analysts are employed, or over the acts of other professionals who are not certified by the BACB.

7. Moates was previously certified by the BACB as a Registered Behavior Technician ("RBT") and was previously bound by the BACB Ethics Code. That Code clearly identified its scope as limited to individuals certified or seeking certification by the BACB.

## PARTIES

8. The BACB is a Florida nonprofit corporation with its principal place of business at 7950 Shaffer Parkway, Littleton, CO 80127.

9. Moates is domiciled in Texas and resides at 2700 Colorado Blvd., Apt. 1526, Denton, TX 76210.

10. The Global Institute of Behavioral Practitioners and Examiners is a Texas nonprofit corporation with its principal place of business at 2700 Colorado Blvd., Apt. 1526, Denton, TX 76210.

11. Moates' Mother, a director of the Organization, is domiciled in Texas and resides at 9448 Castlewood Dr., Fort Worth, TX 76131.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity among the parties and the amount in controversy exceeds Seventy-Five and no/100 Thousand Dollars ($75,000) exclusive of costs, interest, and attorneys' fees.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the causes of action arose within this District and because the Defendants' transact their business within this District.

13. This Court has personal jurisdiction over the Defendants pursuant to C.R.S. § 13-1-124 and the Due Process Clause.

14. This Court has general jurisdiction over the Organization because the Organization conducts business in the State of Colorado and registers a substantial amount of Colorado residents, according to the Organization's GIBPE.org website.

15.     This Court has general jurisdiction over Moates due to, among other things, his many communications with Colorado residents and his certification between November 2020 and November 2021 by the BACB as a Registered Behavior Technician ("RBT").

16.     This Court has general jurisdiction over both Moates and Moates' Mother because the acts and omissions of the Organization in Colorado may be attributed to Moates and Moates' Mother due to Moates and Moates' Mother's failure to observe corporate formalities and their use of the Organization as an alter ego.

17.     This Court has specific jurisdiction over the Organization because the Organization participated in the defamation by posting defamatory statements on its websites.

18.     This Court has specific jurisdiction over Moates. Many of his defamatory and tortious actions were taken in his personal capacity, though these actions were intended to benefit the Organization and to increase the Organization's ability to make money by tearing down the BACB, with which the Organization intends to compete.

19.     This Court has specific jurisdiction over Moates's Mother. She has posted a defamatory statement about the BACB in her personal capacity, though her intention was to benefit the Organization and to increase the Organization's ability to make money by tearing down the BACB

20.     This Court also has specific jurisdiction over both Moates and Moates' Mother because the acts and omissions of the Organization in Colorado giving rise to this lawsuit may also be attributed to Moates and Moates' Mother due to Moates and Moates' Mother's failure to observe corporate formalities and their use of the Organization as their alter ego.

## FACTS COMMON TO ALL COUNTS

21. The BACB has its principal place of business in Littleton, Colorado. The BACB has 90 employees in Colorado. The BACB's property has one large four-story building and another larger building under construction. The BACB holds itself out to the public via its website as located in Littleton, Colorado.

22. Moates is licensed by the Virginia Department of Health Professions as a Behavior Analyst.

23. Moates does not hold a certification from the BACB as a "Board Certified Behavior Analyst." Nevertheless, as discussed above, Moates applied for and received certification as an RBT from the BACB, located in Colorado, on November 28, 2020. His RBT certification expired on November 28, 2021. The BACB's Littleton, Colorado address is noted on all of Moates' RBT certification correspondence, which is attached as Exhibit A.

24. Moates has corresponded with BACB staff through the BACB website form available on the BACB's website (webforms). Correspondence submitted through the website webforms are subject to the Terms of Use of the website that provide, as follows:

> **23. Miscellaneous Provisions**
>
> **Arbitration**
> **You agree that all disputes between you and the BACB (whether or not such dispute involves a third party) with regard to your relationship with the BACB, including without limitation disputes arising out of, related to, or connected with these terms, your use of this site and/or services, and/or rights of privacy and/or publicity, will be resolved by binding, individual arbitration under the American Arbitration Association's ("AAA") rules for arbitration of consumer-related disputes and you and the BACB hereby expressly waive trial by jury.**
>
> This dispute resolution provision will be governed by the Federal Arbitration Act and not by any state law concerning arbitration. The Arbitrator shall not conduct any form of class or collective arbitration nor join or consolidate claims by or for individuals. To the extent

allowed by applicable law, the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of these Terms including, but not limited to, any claim that all or any part of these Terms is void or voidable. Judgment on the award rendered by the Arbitrator may be entered in any court having competent jurisdiction. Any provision of applicable law notwithstanding, the Arbitrator will not have authority to award damages, remedies, or awards that conflict with these Terms.

**Waiver of Right to Jury; Class Action Waiver**
**To the extent allowed by law, you agree to irrevocably waive any right you may have to a trial by jury or other court trial (other than small claims court) or to serve as a class representative, as a private attorney general, or in any other representative capacity, or to participate as a member of a class of claimants, in any lawsuit, class arbitration, consolidation of individual arbitrations, or other proceeding filed against the BACB and its officers, directors, employees, agents, affiliates, licensees, representatives and service providers.**

**Governing Law and Venue**
These Terms shall be governed by and construed in accordance with the laws of the State of Colorado, excluding its conflicts of law rules, and the United States of America. Without waiving the foregoing arbitration clause, you agree that any dispute arising from or relating to the subject matter of these Terms shall be governed by the exclusive jurisdiction and venue of the state and Federal courts of Denver, Colorado, except where the jurisdiction and venue are mandated by applicable Assignment. The BACB may freely assign the BACB's obligations and rights under these Terms, including all Personal Information in the BACB's possession which the BACB has collected during your use of the Site.[1]

25.     In December of 2021, Moates formed an organization named The Foundation for Transformation, naming Moates' Mother and Larry Kieschnick, Moates' stepfather, as Directors thereof, along with Moates.

26.     In March of 2022, Moates amended The Foundation for Transformation's name to The Global Institute of Behavioral Practitioners and Examiners (the "Organization"), which has websites with web addresses of https://gibpe.org/ and https://gibpe.com/. The Organization appears to be attempting to market some of its activities as a competitor of the BACB.

---

[1] *See* https://www.bacb.com/terms-of-use/#governing_law_and_venue

27. Upon information and belief, Moates, Moates' Mother, and Larry Kieschnick continued to be listed as the directors of the Organization until after the filing of this lawsuit on May 19, 2022.

28. After this lawsuit was filed, Moates removed Larry Kieschnick as a director of the Organization. According to Larry Kieschnick, Moates selected him as a director without him even knowing it or agreeing to serve, which further demonstrates the Organization's lack of adherence to corporate formalities. See Exhibit B.

29. Moates' Mother remains as a director of the Organization according to the amended filing. Moates' Mother is also listed on the Organization's website as a "Board Member" of the Organization.

30. According to the Organization's websites, which are readily accessible by the public, the Organization offers, in exchange for fees, coursework, continuing education, and specialty certifications in behavioral sciences, as well as community resources nationwide, including to Colorado residents. The Organization therefore conducts business in Colorado.

31. Moates' Organization's websites are interactive rather than passive. Not only does Moates use the websites to solicit, facilitate, and conduct the transaction of various education products, but Moates solicits the creation of individual user accounts and the submission of personal information. For example, on Moates' GIBPE.org website, for a practitioner to become certified, the user must submit an application form, the user's certifications, license certificates, and official transcripts of the user's university coursework, and a course completion certificate after completing 100 hours in the certification for which the user is applying for. Further, the user

must pay the Organization the cost of the certification, at $250 per certification. Moates' website also has a "Student Login" link that directs the user to a Canvas login page.[2]

32. On June 13, 2022, Craig Nicholson ("Nicholson") of the BACB registered an account on Moates' GIBPE.com website and purchased two continuing education courses from the Organization. Nicholson made the purchases from the BACB's Colorado offices. Moates' website accepted Nicholson's payments totaling $85.00, but did not initially deliver the courses. Nicholson has since sent an email to Moates inquiring about the courses that were not delivered and received course access in Colorado. See Exhibit C.  The BACB has no way to know how many other Colorado residents have made such purchases.

33. The registry shown on Moates' Organization's GIBPE.org website includes 98 registrants from Colorado. *See* Exhibit D. Colorado is therefore the 6th most represented state in all of Moates' Organization's registrants.

34. In addition to competing with the BACB via soliciting the business of Colorado residents through his Organization's websites, Moates uses the Organization as a vehicle to tarnish the reputation of the BACB in order to further Moates' personal or business aspirations.

35. Specifically, Moates uses his Organization's websites, as well as other platforms, including the State of Virginia Board of Medicine public comments and https://original.newsbreak.com to promulgate and perpetuate falsehoods about the BACB.

36. Moates requested comments from BACB employees and/or agents located in Colorado to gather information and/or comments for his publications. *See* Exhibit E.

---

[2] Canvas is a "learning management system" utilized by various entities.

37. Moates, Moates' Mother, and his Organization, in a concerted and intentional effort to undermine the BACB, have published nationwide numerous demonstrably false statements that are defamatory *per se* about the BACB, including but not limited to the following:

   a. The BACB has engaged in illegal or criminal activities, including monopoly and anti-competitive behavior through collusion with the Association of Professional Behavior Analysts. For example, "…the BACB has engaged in illegal anti-competitive behavior and formed a monopoly by lobbying across the United States."

   b. The BACB is causing "harm" to the field of behavior analysis because it focuses mainly on autism and is unwilling to collaborate with and work with other mental health fields. The BACB has many deficiencies and its governing Board "ONLY focuses on one specialty."

   c. The BACB is involved in allowing electric currents to go through the bodies of kids.

   d. The BACB condones shocking minor children for maladaptive behaviors.

   e. The BACB is allowing "human rights violations."

   f. The BACB "gives its seal of approval to torture."

   g. The BACB is unethical and "has no idea what ethics are."

   h. Because the BACB is pulling out of the international market, individuals who want to practice [behavior analysis] internationally will be unable to.

   i. The "BACB discriminates against people of color" and is trying to make the BACB certificant pool more "White American."

   j. The BACB sought to "block off" providers during the COVID-19 pandemic.

38. These statements have been made on behalf of Moates personally and on behalf of the Organization.

39. As an individual previously certified at the technician-level by the BACB, Moates knew or should have known that his statements were untrue and that they left a false impression with the readers.

40. Moates' Mother has also perpetuated the disparagement of the BACB in her personal capacity and in furtherance of the Organization. For example, Moates' Mother has publicly commented on a petition Moates submitted to the Virginia Medical Board while he was using his Organization's corporate affiliation, and she reiterated one of Moates' disparaging comments. *See* Exhibit F.

41. Moates has directly communicated with BACB employees and/or agents located in Colorado. *See* Exhibit E. Most of the defamatory communications were sent to Colorado, circulated within Colorado, and had a Colorado focus since they concerned the BACB's activities in Colorado.

42. On April 5, 2022, Moates filed suit against the BACB in Case No. 22-cv-00262-P in the U.S. District Court of the Northern District of Texas. Moates knew that the BACB has its principal place of business in Colorado because at paragraph 2 of his Complaint, Moates said: "The BACB is located in Colorado." He therefore further knew that the brunt of the injuries he caused would be felt here in Colorado as the core of the BACB's reputation is located in Colorado.

43. Moates asked to speak to BACB employees and/or agents located in Colorado before filing litigation against the BACB. He threatened to sue the BACB via email to a variety of BACB employees and/or agents here in Colorado.

44. Moates has since filed a notice of dismissal of the suit, stating that his intention was to take action in state court.

45. Moates has threatened to continue to broadly publish his defamatory statements nationwide.

46. On April 8, 2022, Moates sent an email to Plaintiff's counsel stating that, if BACB did not "settle" with him, he would spread numerous falsehoods to the United States Congress, every state legislature, thousands of members of the press across the country, various organizations such as the ACLU, and various candidates across the country for Governor, Attorney General, and state and federal legislature.

47. In this same email, Moates threatened that the BACB "settle or we go to war. Your choice." The BACB did not settle.

48. On April 11, 2022, Moates followed through with one of the above-mentioned threats by sending the letter attached as Exhibit G to Congress that asserts the same defamatory statements listed above.

49. In light of the actions the Defendants have taken to threaten the BACB and to spread the falsehoods described herein, the BACB has reason to believe the Defendants will continue their tortious efforts to further cause damage to the BACB.

50. Defendants have also intentionally infringed on the BACB's Federally Registered trademarks as part of their efforts to compete with the BACB.

11

51. The BACB owns federal trademark registrations on the Principal Register for various trademarks and certification marks, including the following (collectively, the "BACB Trademarks"):

| Mark | Registration No. Registration Date | Services/Date of First Use |
|---|---|---|
| **BACB** | 2408451 November 28, 2000 | Establishing and updating educational, certification, and recertification standards for behavior analysis practitioners; and administration of certification and recertification programs for behavior analysis practitioners (May 1998) |
| **BEHAVIOR ANALYST CERTIFICATION BOARD** | 4123348 April 10, 2012 | Establishing and updating educational, certification, and recertification standards for behavior analysis practitioners; and administration of certification and recertification programs for behavior analysis practitioners (May 1998) |
| **BCBA** | 2554698 April 2, 2002 | Certification mark for "Behavior analysis services" (Dec. 31, 1999) |
| **BCABA** | 2554699 April 2, 2002 | Certification mark for "Behavior analysis services" (Dec. 31, 1999) |
| **BCBA-D** | 5959275 January 14, 2020 | Certification mark for "Behavior analysis services" (Dec. 22, 2008) |
| **RBT** | 5028961 August 30, 2016 | Certification mark for "Behavior analysis services" (Aug. 30, 2016) |
| **BOARD CERTIFIED BEHAVIOR ANALYST** | 5038278 September 13, 2016 | Certification mark for "Behavior analysis services" (Dec. 31, 1999) |
| **BOARD CERTIFIED ASSISTANT BEHAVIOR ANALYST** | 4833946 October 20, 2015 | Certification mark for "Behavior analysis services" (Oct. 1, 2009) |
| **REGISTERED BEHAVIOR TECHNICIAN** | 6208450 December 1, 2020 | Certification mark for "Behavior analysis services" (Oct. 16, 2014) |

52. The BACB Trademarks are strong trademarks entitled to a broad scope of protection based on their extensive use for many years and their high degree of recognition in the behavior analysis field by behavior analysis professionals, employers, patients, and others.

53. According to the Organization's website GIBPE.org, the Organization has and continues to this day to claim to offer certifications that infringe on the BACB's Trademarks. See Exhibit H.

54. Specifically, the Organization's marks emphasized with red borders in Exhibit H (the "Infringing Marks") are confusingly similar to the BACB's Trademarks including BOARD CERTIFIED BEHAVIOR ANALYST, BOARD CERTIFIED ASSISTANT BEHAVIOR ANALYST, BEHAVIOR ANALYST CERTIFICATION BOARD, BCBA, BCBA-D, BCABA, and/or BACB. The Organization's use of the Infringing Marks for its certification program that intends to compete with the BACB therefore infringes on the BACB's rights in these BACB Trademarks.

55. Defendants' infringement of the BACB Trademarks is willful given Moates' long familiarity with the BACB and its federally registered BACB Trademarks (including as a former RBT), the strong recognition of the BACB Trademarks in the behavior analysis field, and most notably, the Defendants' total disregard of the cease and desist letter sent by the BACB's trademark litigation counsel on April 8, 2022 to Moates. In fact, in response to the cease and desist letter, Moates declared: "My organization is going to keep its certifications as is."

**FIRST CAUSE OF ACTION**
*Defamation Per Se*
*(As to the Statements Determined by the Court*
*to Pertain to a Matter of Public Interest or General Concern)*

56. The BACB repeats and realleges the allegations set forth in the above paragraphs.

57. The Defendants published accusations and allegations that are false.

58. The accusations and allegations published by the Defendants included false statements that harmed BACB's professional reputation and asserted that the BACB has engaged in criminal activity.

59. The substance or gist of the statements were false at the time they were published and the false statements were such that the publication as a whole was false.

60. At the time of publication to third parties, the Defendants knew that the statements were false or made the statements with reckless disregard as to whether they were false.

**SECOND CAUSE OF ACTION**
*Defamation Per Quod*
*(As to the Statements Determined by the Court*
*to Pertain to a Matter of Public Interest or General Concern)*

61. The BACB repeats and realleges the allegations set forth in the above paragraphs.

62. The Defendants published accusations and allegations that are false.

63. Readers of the statements published by the Defendants understood the statements to be defamatory.

64. The substance or gist of the statements were false at the time they were published and the false statements were such that the publication as a whole was false.

65. At the time of publication to third parties, the Defendants knew that the statements were false or made the statements with reckless disregard as to whether they were false.

66. Publication of these remarks has resulted in damage to Plaintiff's reputation in the community and economic loss, including, but not limited to, the following:

    a. Damages to the BACB's reputation;

    b. Damages for inconvenience;

    c. Loss of earnings or income and ability to earn money in the future;

    d. Other damages that may arise during the course of discovery and the course of this trial.

### THIRD CAUSE OF ACTION
*Libel Per Se*
*(Pled in the Alternative as to Statements the Court Finds Do <u>Not</u> Pertain to a Matter of Public Interest or General Concern)*

67. The BACB repeats and realleges the allegations set forth in the above paragraphs.

68. The Defendants published accusations and allegations that are false.

### FOURTH CAUSE OF ACTION
*Defamation Per Quod*
*(Pled in the Alternative as to Statements the Court Finds Do <u>Not</u> Pertain to a Matter of Public Interest or General Concern)*

69. The BACB repeats and realleges the allegations set forth in the above paragraphs.

70. The Defendants published accusations and allegations that are defamatory.

71. The accusations and allegations were about the BACB.

72. The publication of the accusations and allegations caused special damages to the BACB including:

    a. Damages to the BACB's reputation;

    b. Damages for inconvenience;

    c. Loss of earnings or income and ability to earn money in the future;

        d.        Other damages that may arise during the course of discovery and the course of this trial.

**FIFTH CAUSE OF ACTION**
*Piercing the Corporate Veil*

73. The BACB repeats and realleges the allegations set forth in the above paragraphs.

74. Moates was the incorporator of Organization.

75. Upon information and belief, the only directors of Organization initially were Moates, Moates' Mom, and Larry Kieschnick such that they so organized and controlled Organization's affairs that the Organization was a mere instrumentality of their personal affairs.

76. Upon information and belief, Moates and Moates' Mother have not observed corporate formalities.

77. Upon information and belief, Moates and Moates' Mother treated the Organization as their personal corporation, as evidenced by the fact that Moates used his personal housing address in its incorporation documents.

78. Upon information and belief, Moates, Moates' Mother, and Organization were so closely connected that the Organization was the mere "alter ego" of Moates and Moates' Mother and vice versa.

79. Upon information and belief, Moates and Moates' Mother used the Organization to defame the BACB.

80. Upon information and belief, Moates' and Moates' Mother's manipulation and misuse of the Organization's corporate form was a conscious attempt to avoid liability and proximately caused the BACB monetary harm.

81. Disregarding the Organization's corporate form would achieve an equitable result such that Moates and Moates' Mother should be held personally liable for all the damages alleged in this Complaint.

**SIXTH CAUSE OF ACTION**
*Trademark Infringement*

82. The BACB repeats and realleges the allegations set forth in the above paragraphs.

83. The BACB Trademarks are valid and legally protectable marks.

84. The BACB owns the BACB Trademarks.

85. The Defendants' have used and continue to use similar marks in commerce without the consent of the BACB.

86. The Defendants' of the BACB Trademarks will likely cause confusion among consumers.

87. The Defendants' use of the BACB Trademarks was willful.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the Behavior Analyst Certification Board, Inc., respectfully requests that:

A. The Court grant judgment against Moates, Moates' Mother, and the Organization, jointly and severally.

B. The Court grant injunctive relief against Moates, Moates' Mother, and the Organization.

C. The Court award punitive and exemplary damages.

D. The Court award the BACB an amount that includes the BACB's compensatory damages, costs, and all other just and proper relief.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 16th day of June, 2022.

            HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.

            *s/ Mark L. Sabey*
            Mark L. Sabey
            Lindsay K. McManus
            999 17th Street, Suite 800, Denver, CO 80202
            (303) 801-3538 / marksabey@hallrender.com
            (303) 802-1293 / lmcmanus@hallrender.com

            ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

   The undersigned certifies that on June 16, 2022, a true and correct copy of the foregoing was served via CM/ECF with electronic service upon the following:

Martin J. Champagne, Jr.
CHAMPAGNE LAW FIRM, LLC
1626 N. Washington St.
Denver, CO 80202
mjc@champagne-law.com
*Attorney for Defendants*

            *s/ Crystal J. Sebastiani*
            Crystal J. Sebastiani, Paralegal