## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01247-NRN

BEHAVIOR ANALYST CERTIFICATION
BOARD, INC.,

Plaintiff,

v.

MICHAEL MOATES, an individual;
MISTY KIESCHNICK, an individual; and
THE GLOBAL INSTITUTE OF
BEHAVIORAL PRACTITIONERS AND
EXAMINERS,

Defendants.

---

## MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF
## PERSONAL JURISDICTION

---

Defendants, Michael Moates, Misty Kieschnick and The Global Institute of

Behavioral Practitioners and Examiners, pursuant to Fed. R. Civ. P. 12(b)(2) and

applicable law, move this court for an Order dismissing this case for lack of personal

jurisdiction over defendants. As grounds thereof, defendants submit:

1.      As alleged in the Amended Complaint, defendants are citizens of Texas

and drafted and sent a letter to various political leaders in Washington, D.C.

regarding the business practices of plaintiff.[1] The defendants do not satisfy the constitutionally required "minimum contacts" with Colorado for this court to exercise personal jurisdiction over them.

2.      Plaintiff has served an Amended Complaint (Doc. 21) in response to defendants' Motion to Dismiss (Doc. 18) the initial Complaint (Doc. 1-2). Plaintiff attempts to shoehorn various claims and allegations into the Amended Complaint to save it from dismissal for lack of personal jurisdiction. Plaintiff relies on an unenforceable forum selection clause on their website; an informational registry on the corporate defendant's website comprised of behavioral specialists from other organizations; and an $85.00 purchase plaintiff made from the corporate defendant's website last week (which was refunded). Pursuant to long-standing precedent, such allegations cannot establish the constitutionally required "minimum contacts" with Colorado. Therefore, the Amended Complaint must be dismissed.

## **FACTS**

3.      In the Amended Complaint, plaintiff alleges the individual defendants are citizens of Texas. (Doc. 21 at ¶9, 11).

4.      Plaintiff alleges the corporate defendant, The Global Institute of Behavioral Practitioners and Examiners ("GIBPE"), has a principal place of business

---

[1] Defendants deny the letter is defamatory although concede the court must accept as true the factual allegations in the Complaint for purposes of a Motion to Dismiss. Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit, 507 U.S. 163, 164 (1993).

in Texas. (Doc. 21 at ¶10).

5.    Plaintiff alleges that defendants authorized and mailed a letter to various political leaders and organizations in Washington, D.C., a Commissioner of the United Nations in Switzerland, and a disability advocate in Texas. (Doc. 21 at ¶48-49, 56-72, Doc. 21-8 at ¶29).

6.    Plaintiff alleges that defendants published defamatory comments "nationwide" (Doc. 21 at ¶37) and on the website of the State of Virginia (Doc. 21 at ¶40, Doc. 21-7).

7.    Plaintiff alleges that defendant Moates communicated with plaintiff's employees about pending or anticipated litigation. (Doc. 21 at ¶41-43, Doc. 21-6).

8.    Plaintiff alleges that defendant Michael Moates is licensed by the Department of Health Professionals in Virginia. (Doc. 21 at ¶22).

9.    Plaintiff concedes that defendants are not members of the plaintiff organization, Behavior Analyst Certification Board, Inc., located in Colorado. (Doc. 21 at ¶16).

10.    Plaintiff alleges that the website of GIBPE includes a directory wherein 1.3% of the listed persons reside in Colorado (98 out of 7,389 listed persons). (Doc. 21 at ¶33, Doc. 21-5).

11.    Plaintiff does not allege that the defendants wrote, composed, or disseminated the allegedly defamatory letter in Colorado. The defendants did not

disseminate the letter in Colorado other than sending a copy to plaintiff's counsel. (Doc. 18-1).

## LAW

12.    The due process clause of the 14th Amendment requires a defendant to have certain "minimum contacts" with the forum state so as not to offend the "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).

13.    Whether a forum state may assert jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). To satisfy due process, a defendant's suit-related conduct must create a "substantial connection" with the forum state. Walden v. Fiore, 571 U.S. 277, 283–84 (2014).

14.    However significant the *plaintiff's* contacts are with the forum state and the convenience of the *plaintiff* to litigate in the forum state, the relevant inquiry is if the *defendant* reached into the forum state with significant enough contacts to establish that they should be subject to suit there. Id. at 285.

15.    Examples of "minimum contacts" establishing a "substantial connection" with the forum state include entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum state (Burger King

4

Corp. v. Rudzewicz, 471 U.S. 462, 480 (1985)); sending out magazines to the forum state to "deliberately exploi[t]" a market in in that state (Keeton v. Hustler Mag., Inc., 465 U.S. 770, 781 (1984)); and delivery of substantial goods into a forum state wherein the delivery is not an isolated sale (World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980), *citing to*, Gray v. Am. Radiator & Standard Sanitary Corp., 176 N.E.2d 761, 766 (Ill. 1961)).

16.     An allegation that the plaintiff suffered an injury in the forum state is insufficient by itself to subject a defendant to personal jurisdiction in the forum state. Walden 571 U.S. at 289. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Id. at 290.

17.     When a plaintiff alleges a claim for libel or defamation, a defendant must have "deliberately" availed himself of "minimum contacts" within the forum state for personal jurisdiction to attach. Keeton, 465 U.S. at 781.

18.     In Keeton, the plaintiff alleged that defendant committed libel against plaintiff in five (5) separate issues of defendant's publication. Id. at 772. Defendant circulated between 10,000 to 15,000 copies of each publication within the forum state of New Hampshire. Id. The court found that by circulating the magazines in New Hampshire, the defendant "purposefully" directed itself to the forum state and such contacts were not "random, isolated or fortuitous". Id. at 774. Therefore, suit

in New Hampshire satisfied the requirement of due process. <u>Id</u>. at 776-777 ("The tort of libel is generally held to occur wherever the offending material is circulated.").

19.     In <u>Calder v. Jones</u>, the defendant wrote and published an article in the National Enquirer libeling plaintiff. 465 U.S. 783 (1984). Defendant was a resident of Florida, but the lawsuit was filed in California. <u>Id</u>. at 785. Holding that the defendant had sufficient "minimum contacts" with California, the court noted that 600,000 copies of the offending article were distributed in California (twice any state in the country); the defendants knew the article would be published and widely circulated in California; and that plaintiff's professional reputation would be injured in California. <u>Id</u>. at 789-790.

20.     The 10th Circuit has affirmed that the mere allegation that an out-of-state defendant harmed a forum state resident is not enough to meet the constitutionally required "minimum contacts":

> Our review of these post-Calder decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. <u>Far W. Cap., Inc. v. Towne</u>, 46 F.3d 1071, 1079 (10th Cir. 1995).

21.     Further, phone calls and letters into a forum state are not necessarily sufficient in themselves to establish "minimum contacts". <u>Id</u>. at 1077, *citing to*, <u>Continental American Corp. v. Camera Controls Corp.</u>, 692 F.2d 1309, 1314 (10th

Cir.1982). The operation of a web site that reaches forum state residents also cannot establish personal jurisdiction in the forum state even when the website posts defamatory statements. Shrader v. Biddinger, 633 F.3d 1235, 1244 (10th Cir. 2011).

## **ARGUMENT**

22.   Plaintiff has alleged that citizens of Texas are subject to personal jurisdiction in Colorado based on sending a letter to persons in Washington, D.C., Virginia, Switzerland, and Texas. Plaintiff has made no allegation that establishes defendants had the constitutionally required "minimum contacts" with Colorado. *See*, Int'l Shoe Co., 326 U.S. at 316.

23.   Defendant has not "deliberately" directed any allegedly defamatory statements targeting citizens in Colorado. *See*, Keeton, 465 U.S. at 781. In stark contrast to the defendants in Keeton and Calder where tens of thousands of defamatory materials were deliberately directed and disseminated into the forum state, the defendants have directed no allegedly defamatory statements to persons in Colorado. *See*, Keeton, 465 U.S. at 781; Calder, 465 U.S. at 789-790.

24.   For plaintiff to establish "minimum contacts" and a "substantial connection" to Colorado, they cannot allege a random or fortuitous letter or phone call, but rather they must establish a concerted, deliberate, and purposeful effort to engage itself in activities in Colorado. *See*, Keeton, 465 U.S. at 774. The allegation of an injury suffered in Colorado is not enough to subject defendants to personal

jurisdiction here. *See*, <u>Far W. Cap.</u>, 46 F.3d at 1079. The allegations of defamatory statements on a website (even though the Complaint fails to allege the nature of the defamatory statements) are not enough. *See*, <u>Shrader</u>, 633 F.3d at 1244.

25.     Plaintiff alleges that a 24-pararaph Terms of Use page on plaintiff's website mandates anyone emailing to plaintiff through their website is subject to binding arbitration; a waiver of the right to participate in a class-action; waiver of the right to a jury trial; a $100 limitation of liability; indemnification of the plaintiff for any claims; and designating Colorado for any dispute. (Doc. 21 at ¶24); *see also*, https://www.bacb.com/terms-of-use/#governing_law_and_venue (accessed on June 30, 2022).

26.     The Terms of Use govern "all disputes between you and [plaintiff]… with regard to your relationship with [plaintiff]…". The plaintiff has made claims of defamation and trademark infringement. These claims do not involve a "relationship" between the parties; indeed, plaintiff concedes defendants are not members of the plaintiff organization. (Doc. 21 at ¶16). In addition, a disclaimer on a website that fails to require the user to affirmatively accept the Terms of Use fails to provide constructive notice of these terms and is therefore unenforceable against the user. <u>Nguyen v. Barnes & Noble Inc.</u>, 763 F.3d 1171, 1179 (9th Cir. 2014). The Contact Us page which plaintiff alleges defendant Moates communicated with plaintiff has no such requirement. See, https://www.bacb.com/contact-us/ (accessed

on June 30, 2022). There is simply no legal support for the assertion that emailing to the plaintiff regarding pending or anticipated litigation ropes the defendants into an expansive waiver of rights and subjects them to a lawsuit for unrelated claims in Colorado.

27.     Plaintiff alleges an informational registry on defendant's website subject defendants to a lawsuit in Colorado for unrelated defamation and trademark infringement. (Doc. 21 at ¶33). The directory is available at https://gibpe.org/ros1/#cn-top (accessed on June 30, 2022). The directory is an assimilation of information from the websites of other organizations that credential behavioral analysts. Each listing includes the certification that the behavioral analyst is registered through. For example, QBA[2] (Qualified Applied Behavior Analysis Credentialing Board); ABAT[3] (Applied Behavior Analysis Technician offered through Qualified Applied Behavior Analysis Credentialing Board); QASP-S[4] (Qualified Autism Service Practitioner-Supervisor offered through Qualified Applied Behavior Analysis Credentialing Board) and BCAT[5] (Behavioral Intervention Certification Council).

28.     The registry does not include members or credentialed behavioral analysts of the GIBPE. *See*, Affidavit of Michael Moates dated June 30, 2022. The

---

[2] https://qababoard.com (accessed on June 30, 2022).
[3] https://qababoard.com/aba-technician-credential/ (accessed on June 30, 2022).
[4] https://qababoard.com/qualified-autism-services-practitioner-supervisor/(accessed on June 30, 2022).
[5] https://behavioralcertification.org (accessed on June 30, 2022).

GIBPE has no members or credentialed behavioral analysts.[6] <u>Id</u>. The registry is an informational resource for people looking for a behavioral analyst certified by various organizations. <u>Id</u>.

29.    The GIBPE offers classes in behavioral analysis for those that are interested. <u>Id</u>. The GIBPE has delivered a total of (3) three courses. <u>Id</u>. While an employee of the plaintiff (a Colorado resident) purchased a course on June 13, 2022, the courses were not delivered, and the money was refunded. (Doc. 21at ¶32); Affidavit of Michael Moates dated June 30, 2022. The course was not toward any credentialing nor advertised as for "Board Certification" but were continuing education classes titled "Autism Theory and Technology" and "Psychology Refresher". <u>Id</u>. Another Colorado resident also purchased the "Autism" course. <u>Id</u>. Neither course has anything to do with "Board Certified":





---

[6] Even if these were members or behavioral analysts credentialed through the GIBPE, Colorado residents comprise 98 out of 7,389 persons or 1.3%. This falls far short of "deliberate" and "substantial" contacts with the forum.

10

*See*, https://gibpe.com/course/index.php?categoryid=3 (accessed on June 30, 2022);

https://gibpe.com/course/index.php?categoryid=24 (accessed on June 30, 2022).

30.     One or two sales to Colorado residents of courses unrelated to any claim made in this lawsuit does not establish the constitutionally required "minimum contacts". <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 418 (1984) (unrelated purchases occurring even at regular intervals, are not enough to warrant a state's assertion of personal jurisdiction over a nonresident).

31.     To exercise personal jurisdiction over a nonresident, due process requires an analysis of whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; whether the nonresident defendant "purposefully availed" themself of the privilege of conducting activities within the forum state; and whether exercising personal jurisdiction comports with "traditional notions of fair play and substantial justice." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 462, 472–473 (1985). A fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum. <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 929 (2011).

32.     GIBPE sold 3-continuing education classes into Colorado through their website. None of these continuing education classes "arise out of" or "relate to" any claims in this lawsuit. The constitutional requirements of "fair play and substantial

justice" are not furthered by hauling these Texas defendants into Colorado for such *de minimis* contacts about unrelated sales. *See*, <u>Int'l Shoe Co.</u>, 326 U.S. 310 at 316.

33.    The plaintiff submitted 48-emails with the Amended Complaint. (Doc. 21-6). Every email is sent to the employees of the plaintiff organization regarding pending or anticipated litigation (every recipient has an email address of @bacb.com which is the domain for the plaintiff website of <u>www.bacb.com</u>). Plaintiff alleges the communications are defamatory. (Doc. 21 at ¶41). However, the communication cannot be defamatory because by plaintiff's own admission they are not published to a third-party. *See*, <u>Williams v. Burns</u>, 540 F. Supp. 1243, 1247 (D. Colo. 1982) (publication to a third-party is required to establish claim for defamation).

34.    To the extent plaintiff is preemptively attempting to establish that these communications mean the defendants are subject to jurisdiction in Colorado, this argument fails. Specific personal jurisdiction must be based on activities that "arise[] out of" or "relate [ ] to" the cause of action. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472–473 (1985). As the communications to the plaintiff cannot be defamatory, they have no relation to the claims plaintiff makes in the Amended Complaint. Indeed, if communication regarding pending or anticipated litigation to an out-of-state party subject them to jurisdiction in the forum state, there would never be a jurisdictional defense. This certainly offends the "traditional notions of fair play and substantial justice." <u>Int'l Shoe Co.</u>, 326 U.S. 310 at 316.

35.     Defendants submit this case must be dismissed for lack of personal jurisdiction as the defendants do not have the required "minimum contacts" and "substantial connection" with Colorado. The parties to this long-running feud should have their day in court. However, the constitution requires that the forum for this case should be where it is fair and just. Plaintiff's attempts to shoehorn jurisdiction in Colorado, including purchasing $85 on defendant's website last week, are anathema to the "traditional notions of fair play and substantial justice."

WHEREFORE, defendants move for an Order dismissing this case pursuant to Fed. R. Civ. P. 12(b)(2) and whatever other relief this court deems appropriate.

DATED: June 30, 2022.

Respectfully submitted,

*/s/ Martin J. Champagne, Jr.*
Martin J. Champagne, Jr., #46554
CHAMPAGNE LAW FIRM, LLC
1626 N. Washington St.
Denver, CO 80202
(303) 625-4038 (phone)
(303) 845-9097 (facsimile)
mjc@champagne-law.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 30, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and sent the foregoing by email to the below named Service List.


*/s/ Martin J. Champagne, Jr.*
Martin J. Champagne, Jr.

<u>Service List</u>:
Mark L. Sabey
Lindsay K. McManus
Hall, Render, Killian, Heath & Lyman, P.C.
999 17th Street, Suite 800
Denver, CO 80202
marksabey@hallrender.com
lmcmanus@hallrender.com