IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01247-NRN

BEHAVIOR ANALYST CERTIFICATION BOARD, INC.,

       Plaintiff,

v.

MICHAEL MOATES, an individual;
MISTY KIESCHNICK, an individual; and
THE GLOBAL INSTITUTE OF BEHAVIORAL PRACTITIONERS AND EXAMINERS.

       Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

---

Plaintiff, the Behavior Analyst Certification Board, Inc. ("the BACB"), by and through its attorneys, Hall, Render, Killian, Heath & Lyman, P.C., hereby submits its Response to Defendants' Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction and, as grounds therefor, states as follows:

**INTRODUCTION**

The best way to illustrate the Court's personal jurisdiction in this case is that the actions of Defendants are "something like a bank shot in basketball." *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008). That is, "A player who shoots the ball off the backboard intends to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket." *Id.*

Likewise here, Defendants intended to damage the BACB via the web, but they did so with the ultimate purpose of damaging the BACB's business in Colorado. Defendants are competitors seeking to injure the BACB to improve their own business prospects. Defendants "'express aim' thus can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off the backboard is not simply to hit the backboard, but to make a basket." *Id.*

Defendants do not challenge the personal jurisdiction that this Court has over each **individual** defendant. Instead, Defendants only argue that Defendants **collectively** are not subject to personal jurisdiction. Further, Defendants do not challenge the allegations put forth by the BACB in its Amended Complaint regarding piercing the corporate veil. Accordingly, the acts and omissions of The Global Institute of Behavioral Practitioners and Examiners (the "Organization") may also be attributed to Defendant Michael Moates ("Moates") and Defendant Misty Kieschnick ("Moates' Mother") due to Moates and Moates' Mother's failure to observe corporate formalities and their use of the Organization as their alter ego. Therefore, if this Court should find that any personal jurisdiction exists in this case, it must exist over all Defendants.

## FACT STATEMENT

1. The BACB has its principal place of business in Littleton, Colorado. The BACB has ninety-one (91) employees in Colorado. Its property has one large three story building and another larger one under construction. The BACB owns property only in the State of Colorado. *See* Am. Compl. at ¶ 21.

2. The BACB holds itself out to the public via its website as located in Littleton, Colorado. *Id.*

3. In setting forth Moates' credentials, Defendants misleadingly omit in their Motion to Dismiss (the "Motion") his activity in Colorado related to his credentials, i.e., Moates **applied for and received** certification as a Registered Behavior Technician ("RBT") from the BACB, on November 28, 2020, and in his certification application, agreed to Colorado jurisdiction. *Id.* at ¶ 23. His RBT certification expired **less than a year ago**, on November 28, 2021. *Id.* The BACB's Littleton, Colorado address is noted on all of Moates' RBT certification correspondence. *Id.*

4. Moates' Organization, The Global Institute of Behavioral Practitioners and Examiners (the "Organization"), is directed by Moates, Moates' Mother, and others. *Id.* at ¶ 27. The Organization has the following two (2) website addresses: https://gibpe.org/ and https://gibpe.com/. *Id.* at ¶ 26. The Organization, through its Directors, has participated in the defamation of the BACB by posting defamatory statements about the BACB on its websites. *Id.* at ¶ 16. While Moates and Moates' Mother have also engaged in additional defamatory and tortious actions in their personal capacities, these actions were intended to benefit the Organization and to increase the Organization's ability to make money by tearing down the BACB, with which the Organization intends to compete. *See, e.g.,* Am. Compl. at ¶ 40 ("Moates' Mother has publicly commented on a petition Moates submitted to the Virginia Medical Board while he was using his Organization's corporate affiliation, and she reiterated one of Moates' disparaging comments.")

5. Additionally, the Organization appears to be attempting to market some of its activities as a competitor of the BACB. *Id.* at ¶ 26. Specifically, according to the Organization's

websites, which are readily accessible by the public, the Organization offers, in exchange for fees, coursework, continuing education, and specialty certifications in behavioral sciences, as well as community resources nationwide, including to Colorado residents. *Id.* at ¶ 30. The Organization therefore conducts business in Colorado, as admitted by Defendants in their Motion to Dismiss: "The [Organization] has delivered a total of (3) three courses… an employee of the plaintiff (a Colorado resident) purchased [two] courses… [and] [a]nother Colorado resident also purchased the 'Autism' course." Mot. to Dismiss at ¶ 29. Three (3) of the five (5) **total** courses **sold** by the Organization have therefore been purchased by Colorado residents.

6. The Organizations' two websites are interactive rather than passive. *Id.* at ¶ 31. Not only do Defendants use the websites to solicit, facilitate, and conduct the transaction of various education products, but Defendants solicit the creation of individual user accounts and the submission of personal information. *Id.* For example, on the GIBPE.org website, for a practitioner to become certified, the user must submit an application form, the user's certifications, license certificates, and official transcripts of the user's university coursework, and a course completion certificate after completing 100 hours in the certification for which the user is applying. *Id.* Further, the user must pay the Organization the cost of the certification, at $250 per certification. *Id.* Defendants' website also has a "Student Login" link that directs the user to a Canvas login page. *Id.*

7. On June 13, 2022, Craig Nicholson ("Nicholson") of the BACB registered an account on Moates' GIBPE.com website and purchased two (2) continuing education courses

4

from the Organization. *Id.* at ¶ 32. Nicholson made the purchases from the BACB's Colorado offices. *Id.* Moates' website accepted Nicholson's payments totaling $85.00, but did not initially deliver the courses. *Id.* Nicholson has since sent an email to Moates inquiring about the courses that were not delivered and received course access in Colorado. *Id.* As discussed above, the BACB now knows that the Organization has made five (5) total course sales during its existence, three (3) of which have been to Colorado residents. *See* Mot. to Dismiss at ¶ 29.

8. The Organization's GIBPE.org website includes a registry, which includes 98 registrants from Colorado. *See* Am. Compl. at ¶ 33; s*ee also* Exhibit A. Colorado is the 6th most represented state in all of the Organization's registrants. Am. Compl. at ¶ 33. While Defendants have alleged that the registry is "an assimilation of information from the websites of other organizations that credential behavioral analysts," the Organization's website solicits people to "register" for the Organization's services, the Organization includes a registry on its website, and the registry does not disclose that it has nothing to do with registering for the Organization's services. Through inclusion of the registry on the Organization's website, Defendants are trying to create a false appearance of legitimacy. The registry is yet another example of Defendants' attempts to mislead in an effort to advance their business.

9. The Organization's GIBPE.org website also includes "Goals For the Future." One of the Organization's goals is to "seek to obtain accreditation from: …[the] Behavior Analyst Certification Board," the Plaintiff in this lawsuit and therefore a Colorado-based company. *See* Exhibit B.

10. Moates has recently created another website with the address https://qbswb.com/, for an organization he is a team member of called Qualified Behavioral Scientists Without Borders ("QBSWB"). The QBSWB website's "About Us" page states that the QBSWB is made up of four team members: Shannon Iannotti, Michael Moates, Malea Davis, and Billy Davis. The website states that QBSWB "use[s] non-invasive and least restrictive forms of therapy to help you and your loved ones." The website is interactive rather than passive. For example, the website solicits new patients through a "New Patient Request Form."

11. The QBSWB website includes a "States We Serve and Insurance We Accept" page. On this page, it is noted that: "Shannon, **Michael**, Malea, and Billy practice Behavior Analysis in the following states: California, **Colorado**, Arkansas, New Mexico, Idaho, Nebraska, Illinois, Georgia, South Carolina, West Virginia, Pennsylvania, New Hampshire, Florida, and Maine." *See* Exhibit C.

12. In addition to conducting business and practicing in Colorado, Moates, on behalf of himself and with the intention of benefiting the Organization, has also directly corresponded with residents of Colorado. Am. Compl. at ¶ 24. Specifically, Moates has corresponded with the BACB staff through the BACB website form available on the BACB's website (webforms), and Moates has also corresponded with the BACB staff via email. Am. Compl. at ¶¶ 24, 36, and 41. All emails sent to the BACB staff members must go through the BACB servers located in Colorado.

13. While Defendants would like the Court to believe that all correspondence from Moates to Colorado residents has been "regarding pending or anticipated litigation," that is

6

simply false. While Moates has asked to speak to BACB employees and/or agents located in Colorado before filing litigation against the BACB and has threatened to sue BACB via emails sent to a variety of BACB employees and/or agents here in Colorado, Moates has also requested comments from BACB employees and/or agents located in Colorado to gather information, interviews, and/or comments for his publications. *See* Am. Compl. at ¶ 36.

14. On April 5, 2022, Moates filed suit against the BACB in Case No. 22-cv-00262-P in the U.S. District Court of the Northern District of Texas. *Id.* at ¶ 42. Moates knew that the BACB has its principal place of business in Colorado because at paragraph 2 of his Complaint, Moates said: "The BACB is located in Colorado." *Id.* He therefore further knew that the brunt of the injuries he caused would be felt here in Colorado, as the core of the BACB's reputation is located in Colorado. *Id.*

15. While Moates has since dismissed his April 5, 2022 lawsuit against the BACB, on June 14, 2022 Moates filed suit against President Joseph R. Biden Jr., various states, and numerous individuals. In this suit, he states that "THE BEHAVIOR ANALYST CERTIFICATION BOARD… DE FACTO ENDORSES THE USE OF SHOCKING CHILDREN" and "THEY WILLINGLY CHOOSE TO CONTINUE CERTIFYING PEPOLE WHO ARE CONNECTED TO THE SHOCKING OF MINOR CHILDREN WITH AUTISM." See Exhibit D at 8 and 10.

16. As of today, the BACB has 4,528 certificants in the State of Colorado and an unknown number of potential certificants also located in the state who will likely encounter

Defendants' defamatory statements should they conduct a simple Google search of the BACB.

17. In addition to defaming the BACB, Defendants have also intentionally infringed on the BACB's Federally Registered trademarks as part of their efforts to compete with the BACB. Am. Compl. ¶ at 50. The Organization's website GIPBE.org still, to the date of this filing, claims to offer certifications that infringe on the BACB's trademarks. *Id.* at ¶ 53; *see also* Exhibit E.

## LEGAL STANDARD

The BACB need only make "a prima facie showing" in order to establish personal jurisdiction. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). The court "tak[es] as true all well-pled… facts alleged" and "must resolve any factual disputes in the plaintiff's favor." *Id.*

The Colorado state long-arm statute and due process principles govern the personal jurisdiction inquiry. *See id.* The BACB will address each in turn.

## ARGUMENT

**I.    The Defendants' tortious actions satisfy the Colorado Long-Arm Statute because they caused injury in Colorado – the BACB's principal place of business.**

The Colorado long-arm statute allows Colorado's courts to exercise personal jurisdiction over a non-resident who commits "a tortious act" within the state when the cause of action relates to that tortious act. C.R.S. § 13-1-124(1)(b); *Parocha v. Parocha*, 418 P.3d 523, 527 (Colo. 2018). The tortious act section of the Colorado long-arm statute provides the following:

> (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a

> natural person, his personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> ....
>
> (b) The commission of a tortious act within this state....

C.R.S. § 13-1-124.

The Colorado Supreme Court has previously held that "the tortious act(s) that give(s) rise to jurisdiction must cause injury within Colorado, but that **the conduct itself need not occur in Colorado** to satisfy the long-arm statute." *Parocha*, 418 P.2d at 527 (emphasis added). "[T]he statute is satisfied so long as the resultant harm occurs within the state." *Id.* Because the "resultant harm" of Defendants' defamatory statements and communications occurred within Colorado – the location of BACB's principal place of business and therefore the heart of the BACB's reputation – the Colorado long-arm statute is satisfied.

In enacting this statute, the General Assembly intended to extend the jurisdiction of Colorado courts to the fullest extent permitted by the Due Process Clause of the United States Constitution. *See Scheuer v. District Court,* 684 P.2d 249, 250 (Colo. 1984).

The BACB now will turn its attention to addressing the due process principles implicated in the personal jurisdiction analysis.

  **II.**  **While the defamatory statements published by Moates and his Organization in and of themselves satisfy due process, the BACB can also establish that due process is met under both general and specific jurisdiction.**

To exercise jurisdiction, defendants must have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070. "When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former." *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990). The

contacts "may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." *Dudnikov*, 514 F.3d at 1070. Significantly, "[i]n appropriate circumstances a court may conduct an **abbreviated** minimum contacts analysis when the commission of a tort forms the basis of personal jurisdiction." *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 237 (Colo. 1992) (emphasis added).

### A. The defamatory statements published by Defendants in and of themselves satisfy the due process inquiry.

"Frequently, the commission of a tort, **in itself**, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry." *Id.* In such cases, "there is no need to further engage in a minimum contacts analysis, because the defendant is **so connected** with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction." *Id.* In addition, a defendant can reasonably foresee being haled into court to answer for his tortious conduct. *Id.* at 239.

Moreover, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors" such that "[a]n individual injured in Colorado should not have to travel to [another state] to seek redress from a person, who, though remaining in [that other state], knowingly caused injury to the plaintiff in Colorado." *Morrison v. MacDermid, Inc.*, 2008 WL 4293655 at *6-7 (D. Colo. 2008); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("'A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory. This is because torts involve wrongful conduct which a state seeks to deter, and against which it attempts to afford protection, by providing that a tortfeasor shall be liable for damages which are the proximate result of his tort.'").

Most significantly, however, "no due process notions of fairness are violated by requiring one who intentionally libels another to answer for the truth of his statements **in any state** where the libel **causes harm** to the victim." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) citing *Burt v. Board of Regents of University of Nebraska*, 757 F.2d 242, 245 (10th Cir. 1985)(judgment vacated) (emphasis added).

The BACB's Amended Complaint includes pleadings that (1) Defendants have engaged in defamation and trademark infringement, which are "generally considered intentional torts[,]"; (2) Defendants have knowingly and intentionally defamed the BACB in an attempt to damage the BACB's business to the benefit of their own; and (3) the BACB maintains its principal place of business in Colorado, which is where Defendants caused and continue to cause harm to the BACB. *See Old Republic Insurance company v. Continental Motors, Inc.*, 877 F.3d 895 (10th Cir. 2017). Accordingly, exercising jurisdiction over Defendants in this case will not offend due process notions, and it will afford protection to the BACB, a Colorado company.

> **B. The State of Colorado has general jurisdiction over the Defendants' due to their numerous communications with forum residents and businesses, their obsessive focus on and targeting of a Colorado business, their presence in Colorado through interactive websites, their solicitation of business in Colorado, and their several sales to Colorado residents.**

"[G]eneral jurisdiction… is based on all of a defendant's contacts with the forum state[.]" *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). The plaintiff's claim(s) **need not be related** to those contacts. *See id.*

There are several factors to consider when determining general jurisdiction including "whether defendant **makes sales**, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, **holds a license**, or is incorporated there."

11

*Precision Craft Log Structures, Inc. v. Cabin Kit Co.,* No. 05–199, 2006 WL 538819, at *7 (D. Idaho Mar. 3, 2006) (emphasis added).

"[M]ost courts would agree that operating a web-site selling products to residents of a state *can* subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state." *Shrader*, 633 F.3d at 1243 (emphasis in original). "A website without intrinsic connection with a forum state requires commercial activity carried on with forum residents…" *Id.*

Additionally, the Colorado Supreme Court has recognized that "contact with the forum state by telephone or mail may furnish the necessary minimum contacts essential for the exercise of personal jurisdiction." In fact, communications constitute "an important factor" in a personal jurisdiction analysis. *See Classic Auto Sales, Inc.*, 832 P.2d 233 (finding that exercising jurisdiction was consistent with due process because the non-resident seller defendant had made representations over the phone to the plaintiff and had advertised in two **nationally** circulated magazines); *see also First Horizon Merchant Services v. Wellspring Capital Management,* 166 P.3d 166 (Colo. App. 2007) (finding that a defendant who had participated in **three or four phone calls** with people in Colorado, including a conference call where he apparently said nothing significant, subjected the defendant to personal jurisdiction because the defendant's activity, "although limited, was sufficient to create a reasonable inference that he purposefully availed himself of the privilege of acting in Colorado or of *causing important consequences* in Colorado.").

Conveniently missing from Defendants' Motion is acknowledgment of the following facts:

- Moates was certified by the BACB until November 28, 2021.

- In his certification application, Moates agreed to Colorado jurisdiction.
- Of the five (5) **total** course sales the Organization has made, three (3) were made to Colorado residents.
- Moates sent Colorado residents forty-five (45) emails, including eleven (11) emails requesting comment and/or an interview for his defamatory publications.
- Moates admits on his QBSWB website that he practices Behavior Analysis in Colorado: "Shannon, **Michael**, Malea, and Billy practice Behavior Analysis in the following states: California, **Colorado**, Arkansas, New Mexico, Idaho, Nebraska, Illinois, Georgia, South Carolina, West Virginia, Pennsylvania, New Hampshire, Florida, and Maine." (emphasis added).

Courts have found general jurisdiction on the basis of far fewer connections with the forum state than those made by Defendants here, and the fact that the Defendants' commercial efforts have not been successful does not eliminate the fact that (1) they made the efforts, and (2) their efforts are most connected to Colorado. Accordingly, this Court can properly assert personal jurisdiction, generally, over Defendants.

### C. The Defendants' intentional conduct was calculated to cause injury to the BACB in Colorado, thereby satisfying specific jurisdiction.

Specific jurisdiction "is premised on something of a *quid pro quo*: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov,* 514 F.3d at 1078. The U.S. Supreme Court has instructed that the minimum contacts specific jurisdiction standard is threefold. First, the standard requires that the out-of-state defendant must have "purposefully directed his activities at the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

(1985). Second, the plaintiff's injuries must "arise out of" the defendant's forum-related activities. *Id.* Lastly, exercising jurisdiction must "comport with fair play and substantial justice." *Id.* at 476.

### 1. Defendants have purposefully directed their actions at Colorado.

To establish purposeful direction, the Tenth Circuit requires "(a) an intentional action… that was (b) expressly aimed at the forum state… with (c) knowledge that the brunt of the injury would be felt in the forum state[.]" *Dudnikov,* 514 F.3d at 1072. "[A]ctions that are performed for the very purpose of having their consequences felt in the forum state **are more than sufficient** to support a finding of purposeful direction[.]" *Id.* at 1078. (emphasis added); *see also Burri Law PA v. Skurla*, 35 F.4th 1207, 1215 (9th Cir. 2022) ("if the purpose of an act is to cause harm in the forum state, the act has targeted the forum state.").

In *Silver v. Brown,* a case involving a derogatory blog post, the Tenth Circuit found that purposeful direction was satisfied because (1) the posting of the blog constituted an intentional act when there was evidence that the reason for posting was to damage the plaintiff and the plaintiff's business; (2) the blog was expressly aimed at the forum state due to being all about a forum state resident and a forum state company, and due to the blog being widely available in the forum state over the internet and "all the various ways the internet may be accessed in this day and age"; and (3) the defendant had the knowledge that the brunt of the injury to the plaintiff would be felt in the forum state since the defendant knew that the company was located in the forum state, that the plaintiff lived there, and that plaintiff conducted his business from there. *See Silver v. Brown*, 2010 WL 2354123 at *5-6 (10th Cir. June 14, 2010) (unpublished op.).

Courts have also found that purposeful direction is met when the parties are competitors. For example, in *Precision Craft Log Structures, Inc. v. Cabin Kit Co.,* No. 05–199, 2006 WL

538819, at *7 (D. Idaho Mar. 3, 2006), because the parties were competitors and both parties sold materials throughout the United States, the defendant's "alleged intentional actions were expressly aimed or directed at the forum state and caused harm which the defendant knew would be suffered in the forum state where the plaintiff had its principal place of business."

In this case, Defendants have not only threatened to post/send defamatory statements about the BACB but have carried out their threats by posting their defamatory articles and comments on a variety of platforms to try and intimidate the BACB into removing certain certificate holders from its registry and to try and damage the BACB's business in order to redirect business to themselves. Further, Defendants' defamatory publications are about a company with a principal place of business in Colorado and a professional reputation that is inherently tied to Colorado, not to mention the fact that the publications are widely available in Colorado over the internet. Finally, as discussed above, Defendants knew the BACB's Colorado location as Moates admitted this in the Texas lawsuit, and Moates was formerly registered with the BACB, which has always held itself out as being located in Colorado.

All in all, this is a not a case of "mere untargeted negligence." *See Calder v. Jones*, 465 U.S. 783, 789 (1984). Rather, this is a case of intentional and tortious actions taken by Defendants that were expressly aimed at Colorado, the state in which the BACB maintains its principal place of business and the heart of its reputation.

### 2. The BACB's injuries inflicted by Defendants arise out of Defendants' contacts with Colorado.

Once it has been determined that defendants "purposefully directed" their actions at the forum state, due process requires us to ask whether plaintiffs' injuries "arise out of" defendants' contacts with the forum state. *See Dudnikov*. 514 F.3d at 1078. While the Tenth Circuit has

recognized a circuit split regarding the level of causal connection required between a defendant's contacts with the forum state and the suit at issue and has not itself taken an affirmative position on the issue, the Tenth Circuit has found that when an action is expressly aimed at a forum state resident and his forum state business for the purpose of causing them injury there, the contacts with the forum state from the action are "the cause in fact and the legal cause" of the injury. *See, e.g., Silver*, 2010 WL 2354123 at *7.

Defendants persistent defamation, infringement of the BACB's trademarks, and threats to continue doing the same have been expressly aimed at the BACB, a Colorado business, with the purpose of causing the BACB injury in Colorado and **are the reasons this suit was filed in the first place**. Defendants cannot avoid jurisdiction by "unringing the bell" they rung by refunding the money paid by a Colorado resident for the courses. Defendants delivered the product in Colorado and gave access to a Colorado resident. While it is true the purchase was merely a test to determine whether the website was interactive, it did demonstrate that the site is active and available to Colorado residents.

### 3. The exercise of personal jurisdiction over Defendants in Colorado would not offend traditional notions of fair play and substantial justice.

Once minimum contacts are established, the final due process consideration that must be addressed is whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Dudnikov*, 514 F.3d at 1080. Defendants carry the burden on this issue and must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* Courts consider the following factors in making this inquiry:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of

controversies, and (5) the shared interest of the several states… in furthering fundamental social policies.

*Id.*

None of these factors weigh in favor of Defendants. As in all cases in which the parties reside in different states, "one side must bear the inconvenience of litigating 'on the road'" such that the burden imposed on Defendants in defending a lawsuit in Colorado is no more than what the BACB would face if forced to prosecute in Texas. *See id.* at 1081; *see also Silver*, 2010 WL 2354123 at *8. Furthermore, as mentioned above, Colorado has an "important" and "especial" interest in affording a forum for its businesses to seek redress for tort injuries suffered in Colorado. Finally, it cannot be denied that Colorado best serves the BACB's interest in receiving convenient and effectual relief, as Colorado is the BACB's principal place of business, or that Colorado would seem to provide the most efficient resolution of this case since the injury occurred in Colorado and various witnesses reside in Colorado.

Accordingly, the exercise of personal jurisdiction over Defendants in Colorado does not offend traditional notions of fair play and substantial justice.

### III. Alternatively, the Court should afford the BACB the opportunity to conduct jurisdictional discovery.

The BACB has provided ample evidence of the Defendants' contacts with the State of Colorado. However, if after receiving a reply brief, the Court finds there are facts that need to be explored further, or if the Court were to find that the facts contemplated were not sufficient, the BACB would request, in the alternative, jurisdictional discovery as the Defendants would have information regarding their contacts related to Colorado that are unrelated to the BACB.

In the Tenth Circuit, "[w]hen a defendant moves to dismiss for lack of jurisdiction, **either party should be allowed discovery on the factual issues raised by that motion**." G*rynberg v. Ivanhoe Energy, Inc.*, 666 F. Supp. 2d 1218, 1227 (D. Colo. 2009) (quoting *Budde v. Ling–Temco–Vought, Inc*., 511 F.2d 1033, 1035 (10th Cir. 1975)) (emphasis added).

Courts have broad discretion over whether to allow jurisdictional discovery. *See id*. "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant." *Sizova v. Nat. Institute of Standards & Technology,* 282 F.3d 1320, 1326 (10th Cir. 2002). "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted…or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430 n. 24 (9th Cir. 1977)).

To obtain jurisdictional discovery, a plaintiff "must present a sufficient factual predicate for the establishment of personal jurisdiction." *St. Paul Travelers Cas. & Sur. Co. of Am. v. Guar. Bank & Tr. Co.*, 2006 WL 1897173, at *4 (D. Colo. July 10, 2006).

The BACB believes the aforementioned facts pled herein and in the BACB's Amended Complaint provide the Court with a clear factual predicate for the establishment of personal jurisdiction. The BACB therefore requests that, if this Court happened to find that personal jurisdiction has not been established by the aforementioned pleadings, the Court would order jurisdictional discovery, including but not limited to the ability for the BACB to propound interrogatories, requests for production, and requests for admission. Additionally, the BACB requests that a deposition of Mr. Michael Moates be permitted.

Respectfully submitted this 21st day of July, 2022.

Hall, Render, Killian, Heath & Lyman, P.C.

*s/ Mark L. Sabey*
Mark L. Sabey
Lindsay K. McManus
999 17th Street, Suite 800, Denver, CO 80202
(303) 801-3538 / marksabey@hallrender.com
(303) 802-1293 / lmcmanus@hallrender.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 21, 2022, a true and correct copy of the foregoing was served via CM/ECF with electronic service upon the following:

Martin J. Champagne, Jr.
CHAMPAGNE LAW FIRM, LLC
1626 N. Washington St.
Denver, CO 80202
mjc@champagne-law.com
*Attorney for Defendants*

*s/ Crystal J. Sebastiani*
Crystal J. Sebastiani, Paralegal

4882-3413-7129v3