IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01247-NRN

BEHAVIOR ANALYST CERTIFICATION BOARD, INC.,

Plaintiff,

v.

MICHAEL MOATES, AN INDIVIDUAL; AND
THE GLOBAL INSTITUTE OF BEHAVIORAL PRACTITIONERS AND EXAMINERS,

Defendants.

---

**ORDER ON
DEFENDANTS' MOTION TO DISMISS (Dkt. #22)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on Defendants' Motion to Dismiss Amended

Complaint for Lack of Personal Jurisdiction, filed June 30, 2022. Dkt. #22. Plaintiff

responded on July 21, 2022. Dkt. #23. Defendants filed a reply on August 4, 2022. Dkt.

#28.

All Parties have consented to my jurisdiction and Chief Judge Philip A. Brimmer

referred the matter for all purposes on August 8, 2022. Dkt. #29.

I heard argument on the motion to dismiss on August 23, 2022. Dkt. #31.

**Procedural Background**

Per the Amended Complaint (Dkt. #21), this is a lawsuit brought by the Behavior

Analyst Certification Board, Inc. (the "BACB") against the Global Institute of Behavioral

Practitioners and Examiners (the "Institute") and Michael Moates. Mr. Moates is the

founder of the Institute. Originally, Mr. Moates' mother, Misty Kieschnick, was a named defendant in the action, but she has been dropped by the Plaintiff from the suit. *See* Dkt. #33 (Notice of Voluntary Dismissal as to Misty Kieschnick). The claims asserted against the remaining defendants include claims for defamation *per se* and *per quod*, libel, and trademark infringement. The BACB also seeks to pierce the corporate veil, arguing that the conduct of Mr. Moates should be attributed to the Institute for personal jurisdiction purposes.

**Factual Background**

The BACB is a national non-profit credentialing organization established in 1998 to meet the professional credentialing needs of behavior analysts, governments, insurers, and consumers of behavior analysis services. The BACB relies on its credibility with consumers and licensing authorities to attract professionals to obtain its certifications. Dkt. #21 ¶ 3. The BACB is based in Littleton, Colorado, where it has 90 employees. *Id.* ¶ 21. Behavior analysis is the science of behavior, *id.* ¶ 1, and behavior analysts work with a variety of populations, frequently with individuals with intellectual disabilities and autism spectrum disorders, to help maximize independence by teaching adaptive behavior and minimizing or reducing problem behavior. *Id.* ¶ 2. The BACB claims it is an industry leader in the behavior analyst sector and has over 175,000 current certificants. Thirty-four states have enacted licensure laws and affiliated regulations for behavior analysts. It is alleged that those licensing laws and implementing regulations defer to BACB certification or standards to varying degrees. *Id.* ¶ 5.

Defendant Moates was previously certified by the BACB as a Registered Behavior Technician ("RBT") and was bound by the BACB Ethics Code. Mr. Moates lives in Denton, Texas. His organization, the Global Institute of Behavioral Practitioners and Examiners, is a Texas nonprofit corporation with a principal place of business in Denton, Texas. *Id.* ¶¶ 9–11. Mr. Moates was an RBT with the BACB from November 2020 to November 2021. *Id.* ¶ 15.

It is alleged that Mr. Moates and his Institute are marketing some of its activities as a competitor to the BACB. *Id.* ¶ 26. According to the Institute's website, the Institute offers coursework, continuing education, and specialty certifications in behavioral sciences, as well as community resources nationwide, including to Colorado residents. *Id.* ¶ 30. It is on this basis that the BACB alleges that the Institute "conducts business in Colorado." *Id.* The Institute's website shows 98 registrants from Colorado, indicating that Colorado is the sixth-most represented state of all the Institute's registrants. *Id.* ¶ 33.

This lawsuit stems from claims that Mr. Moates and the Institute are purportedly competing with BACB and promulgating and perpetuating falsehoods about the BACB, tarnishing the BACB's reputation in furtherance of Moates' aspirations. *Id.* ¶¶ 34–35.

BACB alleges that Mr. Moates and the Institute have published nationwide numerous demonstrably false statements about the BACB, including, among others, (1) that it is acting in a monopolistic manner and engaging in anti-competitive behavior; (2) that the BACB is causing "harm" to the field of behavior analysis because it focuses mainly on autism and is unwilling to collaborate with and work with other mental health fields; (3) that the BACB condones the use of electro-shock therapy for minor children

as a means of addressing maladaptive behaviors; (4) that the BACB gives "its seal of approval to torture"; and (5) that the BACB "discriminates against people of color" and is trying to make the BACB certificant pool more "White American." *Id.* ¶ 37.

The BACB's main complaint appears to focus on a letter, dated April 11, 2022, attached as Exhibit A to the Original Complaint (Dkt. #4 at 11–31) sent by Mr. Moates to numerous members of Congress; the President and First Lady of the United States; the Vice-President; a number of Cabinet Secretaries and other executive branch officials; and various state boards of Virginia, Texas, Missouri, Washington, and Kansas. Additional addressees on the letter included the Chief Executive Officer for the American National Standards Institute, the High Commissioner for the United Nations Human Rights Commission, and Texas-based dyslexia disability advocate. Dkt. #4 at 11–14.

Notably, the April 11, 2022 letter attached to the original Complaint was not addressed to anyone in Colorado, instead being directed at politicians or regulatory bodies outside of Colorado.

In the letter's introduction, Mr. Moates writes that he is seeking to address "various problems that are taking place in the field of behavior analysis." Dkt. #4 at 15. The letter does accuse the BACB of anti-competitive practices intended to block other certifying boards in the area of behavior analysis. *Id.* at 15–16.

The letter also explains (and complains) that the BACB continues to certify certain board members from the Judge Rotenberg Center in Canton, Massachusetts, which Mr. Moates claims allows the staff to electro-shock autistic students for bad behavior. Mr. Moates contends that this is a "grave violation of consent" and a violation

of "these most vulnerable students who are helpless and unable to advocate for themselves." *Id.* at 16. The letter complains that the BACB is aware of these practices and is not holding its certified analysts accountable for what the letter calls a "horrific human rights violation." *Id.* at 24. Mr. Moates claims that in many states, based on state regulations, a behavior analyst would have to be certified by the BACB in order to be licensed, which would necessarily force a person to "associate" with this arguably objectionable organization.  In Mr. Moates view, this would be a violation of First Amendment rights. *Id.* at 24.

The letter also alleges that the BACB lacks diversity, claiming only 13 percent of its certificants are male, 0.38 percent are Native American, 6.61 percent are Asian, 9 percent are African American, and 21 percent are Hispanic. *Id.* at 20. Mr. Moates' letter also states that the BACB's alleged certification monopoly has created "a crisis" because there are not enough certified behavior analysts to address the significant demand for treatment by minors with autism. *Id.* at 27.

Mr. Moates' April 11, 2022 letter concludes with numerous appeals, including asking:

- that The Office of Civil Rights of the Department of Justice continue its investigation into the Judge Rotenberg Center in Massachusetts;

- that the federal Food and Drug Administration "stay the course" and continue to fight the Judge Rotenberg Center's practices in court;

- that the Federal Trade Commission open an investigation into the anti-competitive behavior of the BACB and address states that "willingly create a monopoly by blocking alternative certification boards;"

- that the Department of Defense continue working with other providers beside the BACB;

- that the state and federal legislatures open an investigation into the practice of behavior analysis and the standards surrounding the field;

- that certification boards ban the use of electric shock devices;

- that the Department of Education investigate the State of Texas and the way it treats its disabled citizens, including an investigation into the Texas Department of Licensing and Regulation, which is responsible for Dyslexia Practitioners and Behavior Analysts, "as they continue to fail in their responsibilities of making providers available"; and

- that the IRS open an investigation into the BACB and its alleged "co-conspirer"— the Association of Professional Behavior Analysts—based on supposed lobbying, monopolistic, and anti-trust behavior and abuse of the BACB's non-profit "charity" status.

Dkt. #4 at 29–31. The final substantive sentence of Mr. Moates' letter reads, "The Behavior Analyst Certification Board is a threat to the various intellectually disabled communities. They cannot be allowed to continue or we at the bare minimum must offer consumers an alternative to the organization credentialing those engaging in human rights violations." *Id.* at 31.

On April 5, 2022, Mr. Moates filed suit against BACB in the United States District Court for the Northern District of Texas (Case No. 22-cv-00262-P). In that lawsuit, Mr. Moates alleged that the BACB's principal place of business is in Colorado. The BACB argues in this case that Mr. Moates therefore knew that the brunt of the injuries he

would cause to the BACB's reputation by his alleged false statements would be felt in Colorado. Dkt. #21 ¶ 42. Mr. Moates has since dismissed the Texas federal lawsuit.

In addition to defamation and libel, the BACB alleges that Mr. Moates' Institute has infringed various of BACB's trademarks by using the terms BOARD CERTIFIED BEHAVIOR ANALYST, BOARD CERTIFIED ASSISTANT BEHAVIOR ANALYST, BEHAVIOR ANALYST CERTIFICATION BOARD, BCBA, BCBA-D, BCABA, and/or BACB in its certification program materials. *Id.* ¶¶ 54–55.

**Defendants' Motion to Dismiss**

Defendants' Motion to Dismiss is premised entirely on lack of personal jurisdiction. Defendants argue that they may have sent correspondence to political leaders in Washington, D.C., and other states which was critical of the BACB's business practices, but none of their conduct satisfies the constitutionally required minimum contacts with the State of Colorado to justify the exercise of personal jurisdiction in Colorado. As Defendants put it, to justify personal jurisdiction in Colorado, the BACB "relies on an unenforceable forum selection clause on their website; an informational registry on the corporate defendant's website comprised of behavioral specialists from other organizations; and an $85.00 purchase plaintiff made from the corporate defendant's website last week (which was refunded)." Dkt. #22 at 2. Per Defendants, such sparse allegations are not enough to support personal jurisdiction in Colorado over a Texas resident and Texas corporation.

Defendants also point out that there is no allegation that Defendants wrote, composed, or disseminated the allegedly defamatory letter in Colorado. It was only sent to Colorado in connection with sending a copy to the BACB's counsel. Dkt. #22 at 3–4.

In response, the BACB argues that Mr. Moates' false and defamatory publications were widely posted on the internet ("with nationwide availability") and were subject to reposting by others. Dkt. #32 at 2. The BACB alleges that most of the defamatory comments were sent to Colorado, circulated within Colorado, and had a "Colorado focus" since they concerned BACB's activities in Colorado. Dkt. #21 at 10. The BACB argues that if this case does not satisfy the jurisdictional burden, then "there will be virtually no long arm jurisdiction over internet and email-based tortious conduct." Citing then-Judge (now Justice) Gorsuch's opinion in *Dudnikov v. Chalk & Vermilion Fine Arts*, *Inc.*, 514 F.3d 1063 (10th Cir. 2008), the BACB equates Mr. Moates' conduct to a basketball "player who shoots the ball off the backboard intending to hit the backboard, but he does so in the service of his further intention of putting the ball into the basket." Dkt. #23 at 1 (citing *Dudnikov*, 514 F.3d at 1075).

In *Dudnikov*, the Tenth Circuit found that a defendant's sending of a letter to eBay in California challenging a Colorado's resident's eBay auction (on allegedly specious grounds) was expressly aimed at Colorado because the ultimate intended effect of the letter was to cancel the plaintiff's Colorado auction. 514 F.3d at 1075. Hence, Judge Gorsuch's backboard bank shot analogy: the "express aim" of the letter was to stop a Colorado auction but to do so, it had to be sent to eBay in California. *Id*. The BACB argues that while Mr. Moates may have sent his letter to politicians and regulatory agencies in Washington, D.C., or other states, the "express aim" was to do harm in Colorado to the BACB.

In opposition to Defendants' Motion to Dismiss, the BACB attached an Exhibit A, listing 34 separate posts or internet publications by Mr. Moates relating to the BACB or

the practice of shocking autistic children. *See* Dkt. #34-1. This is purportedly submitted to show Defendants' comments were directed at the Colorado. But the Court notes that the majority of these posts were instead found on a Virginia government "Regulatory Town Hall" comment board, with no connection whatsoever to Colorado. In fact, none of these publications appear to be directed to Colorado.

Beyond specific jurisdiction, the BACB also argues that there is general jurisdiction over Defendants because Mr. Moates has practiced behavior analysis in Colorado, he formerly held a certification by BACB, and in his certification application he agreed to Colorado jurisdiction. In addition, the Institute solicits business from Colorado residents and has made course sales to Colorado residents. *See* Dkt. #23 at 12–13.

**Legal Standards**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge the Court's jurisdiction over the named parties. As the plaintiff, the BACB bears the burden of demonstrating that the Court has personal jurisdiction over Defendants. *See Dudnikov,* 514 F.3d at 1069. When, as here, the district court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering whether Defendants have sufficient contacts with this District to support the Court's exercise of personal jurisdiction, the Court must accept all well pleaded facts and must resolve any

factual disputes in BACB's favor. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show both that jurisdiction is proper under the forum state's long-arm statute and that the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). Colorado's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of the Due Process Clause, and therefore, the analysis collapses into a single due process inquiry. *See* Colo. Rev. Stat. § 13-1-124(1); *Dart Int'l, Inc. v. Interactive Target Sys., Inc.*, 877 F. Supp. 541, 543 (D. Colo. 1995) (citing *Safari Outfitters, Inc. v. Superior Court*, 448 P.2d 783 (1968)).

"The Due Process Clause protects a [defendant's] liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The cornerstone of the personal jurisdiction inquiry is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)). To comport with due process limitations, a court may exercise personal jurisdiction only over defendants that have "certain minimum contacts" with the forum state. *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). When there are multiple defendants, "minimum contacts must be found as to

each defendant over whom the court exercises jurisdiction." *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990).

The minimum contacts standard may be satisfied in either of two ways—general or specific jurisdiction. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). A court's duty is the same in either case: it must guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen*, 444 U.S. at 292 (quoting *Int'l Shoe*, 326 U.S. at 316). General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state and does not require that the claim be related to those contacts. Specific jurisdiction depends on an "affiliation between the forum and the underlying controversy." 444 U.S. at 292. For a court to assert specific jurisdiction, the out-of-state defendant must have (1) purposefully directed its activities at residents of the forum, and (2) the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Burger King*, 471 U.S. at 472. The purposeful direction requirement "ensures that defendants will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person." *Id.* at 475.

In sum, whether a forum state may assert jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). To satisfy due process, a defendant's suit-related conduct must create a "substantial connection" with the forum state. *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). Ultimately, the "proper question is not where the plaintiff

experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). If the minimum contacts standard is satisfied, a court assessing the personal jurisdiction question next considers whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 (10th Cir. 2022).

In assessing whether a plaintiff has established a substantial connection with the forum state by purposefully directing his conduct toward that state, a court should apply the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984), which asks whether an out-of-state defendant's tortious conduct satisfies three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) . . . knowledge that the brunt of the injury would be felt in the forum state. *Eighteen Seventy*, 32 F.4th at 966–67. A failure to satisfy even one of those elements will doom any attempted showing of purposeful direction. *Id.* at 967. In all cases, the point of the purposeful-direction requirement is to "ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475).

In the libel or defamation context, the Supreme Court has found that where a magazine or newspaper has sent tens of thousand of copies of the offending article to readers in the forum state, that may be enough to satisfy due process. *See, e.g., Keeton v. Hustler Mag.*, *Inc.*, 465 U.S. 77 (1984) (circulation of 10,000 to 15,000 of five separate offending publications within forum was deemed to be sufficiently directed and not "random, isolated or fortuitous" to justify personal jurisdiction in New Hampshire of

foreign publisher); *Calder*, 465 U.S. 783, (personal jurisdiction in California over Florida-based <u>National Enquirer</u> magazine was supported by fact that 600,000 copies of the offending article were distributed in California and the plaintiff's professional reputation as actress would be injured in California). In *Dudnikov,* the Tenth Circuit distilled the essence of *Calder* as follows:

> Distilling *Calder* to its essence, we thus understand the Court to have found purposeful direction there because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and her career revolved around the entertainment industry there).

514 F.3d at 1072. In other words, in *Calder*, California was the "focal point" of the allegedly tortious story. *Id.* at 1074. Importantly, in the Tenth Circuit at least, it is not enough for personal jurisdiction purposes that a defendant individually target a known forum resident. Instead, the forum state itself must be the "focal point of the tort." *Id.* at 1074 n.9 (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995)). The "express aiming" test focuses on a defendant's intentions—where was the "focal point" of its purposive efforts? *Id.* at 1075.

As noted, the final inquiry is whether Colorado's exercise of personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316. The following factors are relevant to the fair play and substantial justice assessment: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental

substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks omitted).

**Analysis**

> **There is no general jurisdiction over Defendants in Colorado.**

First, I conclude there is no basis to exercise general jurisdiction over Mr. Moates or the Institute in Colorado. The Supreme Court has made clear that there is only general jurisdiction over an out-of-state defendant where the defendant's contacts or affiliations with the forum are "so continuous and systematic" as to render it "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). In this case, the alleged ties of the Defendants to Colorado are weak and do not come close to making either Mr. Moates or the Institute "at home" in Colorado. For example, the BACB cites to the fact that there are 98 registrants for the Institute's services in Colorado. But the BACB cites no case that would make an organization effectively "at home" in a state where it has a certain number of registrants, subscribers, or members. The submitted registry list by state for the Institute (Dkt. #21-5) shows that the Institute has 7,388 total registrants, with 5,875 registrants in California, 158 in Arizona, 105 in New Mexico, 311 in Idaho, with the rest scattered across the country. Colorado's 98 registrants make up only approximately 1.32 percent of the total—hardly enough to say the Institute is "at home" in Colorado.

Equally unpersuasive is the BACB's argument that Mr. Moates, by applying for and receiving a certification as an RBT from the BACB for a limited period of time, somehow agreed to subject himself to Colorado jurisdiction as a defendant for a

defamation action *brought by the BACB* in Colorado. Maybe disputes related to Mr. Moates' certification status with the BACB could be properly brought in Colorado. But by the BACB's logic, any person who ever agreed to be certified by the BACB could be subject to suit in Colorado for almost anything, whether in tort or for breach of contract. The BACB provides no authority that would justify forcing Mr. Moates or the Institute (which was not, of course, a signatory to any agreement with the BACB) to answer a tort claim brought by the BACB in Colorado.

**There is no specific jurisdiction over the Defendants in Colorado.**

The question of specific jurisdiction is slightly more difficult to resolve. Despite somewhat opaque precedent relating to defamation cases, I conclude that, under Tenth Circuit decisions and decisions issued in this District, the BACB has not made out the necessary prima facie showing that Colorado was the "focal point" of Defendants' allegedly tortious conduct.

Two cases from this Circuit lead me to this conclusion. First is *Dudnikov* itself. That case makes clear that the "mere foreseeability of causing an injury in the forum state is, standing alone, insufficient" to justify personal jurisdiction. *Dudnikov*, 514 F.3d at 1077. A plaintiff must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Id.* (emphasis in original). In this case, the only argument the BACB makes about the supposed Colorado "focus" of Defendants' actions is that Mr. Moates knew the BACB was located in Colorado and the nationwide distribution of supposedly defamatory statements would have impact on the BACB in Colorado. This is simply not enough.

The second case is *Schrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011). There, the Tenth Circuit held that in cases involving publications over the internet (where allegedly tortious publications are theoretically accessible from anywhere), the emphasis is on whether a website or other internet user "intentionally directed his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Schrader*, 633 F.3d at 1240. Per *Schrader*, simply posting defamatory statements on a website will not, standing alone, form a basis for personal jurisdiction against the poster in any state where the post may be read. *Id.* at 1241. This is so, even if it is known that the defamatory statements could cause injury in the forum. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." *Id.*

The "express aiming" test requires the Court to focus on Mr. Moates' intentions and ask: "[W]here was the 'focal point' of [his] purposive efforts?" *Dudnikov*, 514 F.3d at 1075. It is obvious that, whether it is the initial April 11, 2022 letter that Mr. Moates sent to various national politicians and federal and state agencies, or the numerous blog posts and articles that Mr. Moates wrote commenting on the BACB (mostly found on the Virginia regulatory town hall forum), Mr. Moates was not directing his comments or publications towards Colorado. Instead, as is clear from the numerous different addressees, Mr. Moates was directing his statements to federal or (non-Colorado) state regulatory agencies, asking for, among other things, action on (or a refutation of) the practice of using electroshock therapy on autistic children and seeking oversight of the allegedly anticompetitive behavior of the BACB. While these letters and statements, if

acted upon, might have had indirect effects in Colorado, it is difficult to see how Colorado could be deemed the "focal point" of Mr. Moates' statements or his purposive efforts.

Thus, this case is not like *Calder*, where the Florida-based National Enquirer wrote an article drawn from California sources, impugned the professionalism of an entertainer whose television career was centered in California, and the allegedly libelous story concerned the California activities of a California resident. *Calder*, 465 U.S. at 783. Instead, the case is much more similar to *International Association of Certified Home Inspectors v. Lesh*, No. 18-cv-0454-WJM-SKC, 2018 WL 6249908 (D. Colo. 2018), a recent decision issued by Judge William J. Martinez. In *Lesh*, a trade association of home inspectors based in Colorado sued the author of an allegedly defamatory article published in the official publication of the American Society of Home Inspectors. The publication was distributed nationwide, including to Colorado residents. The defendant author was an Illinois resident with no meaningful ties to Colorado. Citing *Dudnikov*, *Shrader*, and *Calder*, Judge Martinez dismissed the case for lack of personal jurisdiction, explaining that to find specific jurisdiction, "there must be some other connection to Colorado, other than the mere fact of [the aggrieved Plaintiff's] presence in the state." *Id.* at *4. Because the disputed statements were posted on the internet and not targeted at Colorado "in terms of its audience or content" there was no personal jurisdiction. *Id.* at *5.

The same could be said for the instant case; nothing about Mr. Moates' conduct or his disputed statements, either in terms of its audience or content, appears to be purposefully directed at Colorado, as opposed to anywhere else. *See id.* ("[The trade

association] has not pled facts that plausibly support a claim that Lesh intended to harm [the association] primarily or particularly in Colorado (as opposed to anywhere else), other than alleging he knew [the association's] headquarters are in Colorado.").

Another instructive case is *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001). There, the Third Circuit found no personal jurisdiction in Pennsylvania over an out-of-state defendant who had published allegedly defamatory information in letters which were distributed and shared with individuals in the professional boxing community, located throughout the country. The Third Circuit distinguished *Calder* and found that although the plaintiff was allegedly injured in Pennsylvania, the disputed conduct was not expressly aimed at the forum. "Unlike the defendants in *Calder*, whose national magazine is published in California more than any other state and whose story focused on California, it cannot be said that the defendants here expressly aimed their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity." *Remick,* 238 F.3d at 258 (internal citation omitted). Thus, even though the brunt of the harm from the alleged defamation was felt in Pennsylvania, the court concluded that Pennsylvania was not the focal point of the tortious activity and there was no jurisdiction over the defendants.

So it is in this case. Mr. Moates appears to have engaged in a national awareness-raising campaign by targeting federal and state regulatory agencies about problems he perceives with the certification of behavior analysts generally, and the actions of the BACB in particular. But from the allegations in the Amended Complaint, the Court cannot perceive how Colorado could be considered the "focal point" of his purposeful efforts. As for the "bank shot" argument raised in *Dudnikov* and asserted by

the BACB in this case, the proposed "bank shot" here is too indirect to justify the assertion of personal jurisdiction. In *Dudnikov*, a claimed infringement notice was sent to eBay in California "with the ultimate purpose of cancelling the plaintiffs' [eBay] auction in Colorado. Their 'express aim' thus can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket." 514 F.3d at 1075. By contrast, here, Mr. Moates appears to be asking various regulatory agencies to take steps to investigate the certification of behavior analysts generally and the certification by the BACB of analysts who use of electroshock therapy. The impact on Colorado is too indirect to apply the *Dudnokiv* "bank shot" reasoning.

**Conclusion**

For the foregoing reasons, the Curt **ORDERS** as follows:

1) Defendants' Second Motion to Dismiss for Lack of Jurisdiction (Dkt. #22) is **GRANTED**;

2) Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction; and

3) The Clerk of Court is directed to **TERMINATE** this action. Each party shall bear his or its own attorneys fees and costs.

**SO ORDERED.**


Date: <u>December 7, 2022</u>                    _____
                                                N. Reid Neureiter
                                                United States Magistrate Judge